1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


- - - - - - - - - - - - - - - X
WESTGATE RESORTS, LTD., et al.,    :
                                   :
         Plaintiffs,               :    Case No.:
                                   :    6:17-cv-1467-Orl-37DCI
                                   :
vs.                                :
                                   :    Orlando, Florida
                                   :    September 26, 2018
MITCHELL REED SUSSMAN and          :    9:04 a.m.
MITCHELL REED SUSSMAN &            :
ASSOCIATES,                        :
                                   :
         Defendants.               :
                                   :
- - - - - - - - - - - - - - - X

        TRANSCRIPT OF MOTION HEARING (DOCS. 69 AND 71)
          BEFORE THE HONORABLE DANIEL C. IRICK
             UNITED STATES MAGISTRATE JUDGE


APPEARANCES:


 Counsel for Plaintiffs:        Jeffrey Backman

 Counsel for Defendants:        Michael McGirney




Proceedings recorded by digital recording.
Transcript produced by computer-aided transcription.


Court Reporter:   Suzanne L. Trimble, CCR, CRR, RPR
                  Federal Official Court Reporter
                  401 West Central Boulevard, Suite 4600
                  Orlando, Florida 32801
                  e-mail: trimblecourtreporter@gmail.com

P R O C E E D I N G S

1            P R O C E E D I N G S

2    THE COURTROOM DEPUTY:  Case

3 No.6:17-cv-1467-Orl-37DCI, Westgate Resorts LTD, et al.

4 Mitchell Reed Sussman et al.

5    Counsel, please enter your appearances for the

6 record.

7    MR. BACKMAN:  Good morning, Your Honor.  Jeffrey

8 Backman for the plaintiffs.

9    MR. MCGIRNEY:  Good morning, Your Honor.  Michael

10 McGirney for the defendant Mitchell Sussman, and Mr. Sussman

11 is here.

12    THE COURT:  All right.  Thank you.  All right.  Good

13 morning, everyone.  We're here for two motions in this case.

14 The motion to compel, there's a motion for sanctions.

15 Mr. Backman, I guess, just I'm going to ask you to just get me

16 up to speed first, at least according to Mr. McGirney's

17 response on September 21st, documents were turned over.  So I

18 just want to see what's still in play here.  Even if all of

19 the documents were turned over, I understand the sanctions

20 motion is still in play, but I just want to see where we're

21 at.

22    MR. BACKMAN:  Yeah.  There's actually two parts to

23 that particular motion, Your Honor.  There's one, the failure

24 to comply with the Court's order from June 11th, and part of

25 that is the requirement that the defendant provide a privilege

1    log.  A document was served that purports to be a privilege

2    log, but our motion also addresses that particular issue.  So

3    we can see if we can handle that.  That is still outstanding.

4            As to the supplemental response and production that

5    was provided by Mr. McGirney on behalf of Mr. Sussman, it was

6    a whopping six pages.  It is not the documents that were

7    supposedly withheld based upon the callous objections that

8    were asserted and overruled by the Court in response to the

9    first request for production.  They did not produce unredacted

10   copies of the prior production.  Those redactions, my

11   understanding, were all based upon confidentiality objections,

12   not privilege objections.

13           And we still don't have an endless number of

14   documents that, quite candidly, have to exist.  An easy

15   example is any document relating to payments that were made by

16   a client of Mr. Sussman to Mr. Sussman.  That's just an easy

17   example.  I have a whole list.

18           THE COURT:  There's other easy examples.  There's

19   employees, for example.

20           MR. BACKMAN:  Correct.

21           THE COURT:  There's Alex and Jason.  I understand

22   where you're coming from in relation to that.

23           All right.  So sounds like --

24           MR. BACKMAN:  Our position is that all goes back to

25   that June 11th order.  This is not new stuff.

*4*

1          THE COURT:  No.  I understand.

2          MR. BACKMAN:  Yeah.

3          THE COURT:  So I guess we'll take these kind of one

4    at a time then to a certain extent.  Well, let me take the

5    plaintiff's motion first.  Even though it's the second filed

6    motion, you already started talking about that.  So I'll let

7    you make whatever record you want to make.  I mean, I guess,

8    just to get everyone started to understand where I'm at, these

9    documents have already been compelled.  So my only question

10   is, has compliance been made or not?  If compliance has not

11   been made, then I can enter an order compelling again, and an

12   order granting sanctions.

13          I mean, the sanctions you're requesting, to me, are

14   twofold.  One is for attorneys fees.  Fine, I've already done

15   that in this case.  Unless it's substantially justified, their

16   failure to comply, I'll do it again.  You asked also as a

17   sanction a waiver of attorney-client privilege.  You didn't

18   really cite any case law with that.  I'm not familiar with

19   that as a sanction.  I'm not saying attorney-client privilege

20   applies here, but as far as being a sanction, I don't

21   necessarily think that's appropriate.

22          So, I mean, I don't feel that we necessarily need to

23   go through every discovery request.  I'll hear from

24   Mr. McGirney, but as far as I can see, the order has not been

25   complied with.  It's not being complied with.  I'll enter an

1  order compelling again.  Frankly, at some point in this case,

2  I expect the motions for sanctions it's not just attorney's

3  fees.  There's a lot of things the Court can do under Rule 37.

4  So if they're not gonna comply with discovery or participate

5  in this case, we'll just take it at that.

6          And then let's discuss the motion and the documents

7  first before we discuss the privilege log.

8          MR. BACKMAN:  Okay.  So --

9          THE COURT:  So if you want to just address the part

10  in your motion directed to the motion to compel.

11          MR. BACKMAN:  Sure.  I'm happy to do a second -- I

12  mean, you just basically said what I was going to say.  I

13  mean, I think this goes back to June 11th.  We put the

14  specifics in there because they did provide a supplemental

15  written response, and it's still insufficient.  The documents

16  were previously objected to.  They never told us that they

17  weren't in existence, and now they've either said they don't

18  exist or in some of them they've actually said, going back to

19  July 3rd when he provided that written response, that he's

20  still working on gathering them, and we still don't have those

21  that he said he's still working on gathering them.  And then

22  there are those specific examples that we believe are just

23  patently false based upon documents we have from others.  And

24  we have none of that.

25          And so I think he needed to comply with the

*6*

1    June 11th order.  He has not done that.  The documents that we

2    previously were served with are insufficient in many ways.

3    They were redacted.  We haven't received unredacted versions

4    of that limited production.  There was a PDF provided that

5    comprises the substantial number of that original 300, and it

6    appears to be a PDF of what would otherwise be an Excel

7    spreadsheet.  So when you print it out, of course, it prints

8    out to roughly 250 pages, but we don't have the native version

9    of that document.

10         Quite frankly, we don't even know what it is.  He's

11    still redacting client names.  We don't have retrainer

12    agreements.  We don't have the monetary information that I had

13    mentioned previously, the information about the employees, the

14    specifics of the 43 timeshare exit companies with whom he

15    works, how the advertising issues, all of those things.  We

16    have none of it.  They haven't produced it.  They haven't

17    complied with the June 11th order.

18         I think there's a prima facie case established.  So

19    the burden shifts to them to demonstrate the reasonable

20    efforts.  And they need to do more than just say something.

21    That's what the case law says.  *Chase* is a primary example of

22    that.  Rule 37(b)(2) speaks to that.  And his opposition

23    actually says this isn't about privilege.  It's about 4-1.6.

24         I would submit to the Court that my understanding

25    and recollection of the facts is that Mr. Sussman is not a

1   licensed Florida lawyer.  So I'm not sure how that Bar rule

2   would be applicable anyway; although, there may be an

3   equivalent in California.

4          They address nothing.  In fact, I think in

5   paragraph 8 of the opposition they actually admit to not

6   complying with the order.  They provide nothing to

7   substantiate their burden that they engaged in any reasonable

8   efforts to comply, let alone any efforts at all.

9          So I don't think that they've met their burden.  So

10  the question would be what the sanction is.  Your Honor,

11  touched on a couple.  I think it's within the Court's

12  discretion under Rule 37(b)(2) what sanction can be applied.

13  We have asked specifically for the monetary sanctions.  We've

14  asked that those sanctions related to the filing of this

15  particular motion also be assessed against counsel.

16         At this point, I think counsel has some sort of

17  obligation to ensure that, one, the things that he's filing

18  and saying to the Court are done correctly with reasonable

19  efforts and basically in compliance with Rule 11.  But I think

20  at this point it's incumbent upon him to make sure that he's

21  getting the information that he needs from his client in

22  ensuring that court orders are in fact met, court obligations

23  are met.

24         So I think the Court has a wide array of discretion.

25  We specifically mention the privilege issue because I don't

1    think the documents that I saw listed in that privilege log

2    are in any way privileged.  In fact, I think I counted a total

3    of ten that are actually between Mr. Sussman and a client and

4    they're all referred to as congrats letters.  I don't think

5    any of them are actually a rendition of legal services, the

6    providing of legal advice.  So I think all of those should

7    just sort of wholesale be compelled without even engaging in a

8    privilege analysis.  But nonetheless, to the extent there is a

9    privilege in light of the consistent failure to not respond,

10   in light of just the outright refusal to comply with this

11   Court's order, the failure to appear at hearings where they're

12   ordered to appear, all of those things, I think, a waiver

13   should be applicable, not just the general rule that failing

14   to do something, make an objection, or do compliance with the

15   Court's standing order can constitute waiver.  I think

16   37(b)(2) would provide the Court with the discretion to do

17   that as well.

18            At some point, you're right.  I think we need to get

19   to striking pleadings and doing other more serious sanctions.

20   I know I hadn't specifically asked for it in the document, but

21   I believe the Court has the discretion under 37(b)(2) to enter

22   a sanction that it believes appropriate under the

23   circumstances.

24            So that's our position on the first part of it.

25   I'll gladly come back and deal with the privilege issues, if

1   we get there.  Thank you, Your Honor.

2          THE COURT:  Okay.

3          MR. MCGIRNEY:  Your Honor --

4          THE COURT:  Yes.

5          MR. MCGIRNEY:  Michael McGirney for Mr. Sussman.  If

6   you will recall, a month ago I was in this court, and I

7   basically came in and I told you exactly why certain things

8   had not been complied with, and I apologized to the Court.

9          We did do a supplemental response on July 3rd, which

10  was roughly not even ten days after my surgery, and I believe

11  I had just gotten home from the hospital and was able to do

12  something over the phone, although it has been difficult,

13  obviously, to deal those types of issues.

14         THE COURT:  Well, Mr. McGirney, let me say this:  I

15  understand you got a surgery and you have the diagnosis that

16  you had and you've been dealing with that, but that doesn't

17  excuse your client from complying with the Court's orders.

18         One, you never made a request for additional time

19  that I denied, as far as I know, in relation to your

20  condition.  Every time you requested substantial additional

21  time, I granted it.  And there's been no other requests for

22  additional time on this basis.

23         In addition, there's been another attorney in this

24  case the whole time.  Mr. Cory Chandler has made a general

25  appearance in this case.  We've had him in court.  I've named

1   him twice in orders saying that he had an obligation to comply

2   while you were undergoing your medical treatment.  And this

3   client can hire other attorneys.

4           MR. MCGIRNEY:  Your Honor, I understand.  We did --

5   unlike the Orange Lake case, we did produce documents.  They

6   were redacted.  The Bar rule requires us to maintain the

7   confidence, and that includes the identity of the client.  We

8   know that Mr. Backman's goal in this case -- in this case,

9   which quite frankly doesn't really stay the cause of action --

10  to get the identity of my client's clients and attempt to sue

11  them or bring them in, and we have an obligation under the Bar

12  rules to preserve that information.

13          And in fact, the Bar rules say that unless an

14  appellate court tells -- so if you order me today to produce

15  that, we're going to have to file an appeal.

16          THE COURT:  Well, first of all --

17          MR. MCGIRNEY:  We're following the Bar rule.

18          THE COURT:  Excuse me, sir.  First of all, that's

19  not what the Bar rule says.  The Bar rule says you may seek

20  appellate relief if you choose to do sol.  Otherwise, you have

21  to comply with the Court's order.  Second of all, client names

22  can theoretically be privileged.  Courts have held them

23  privileged in very specific circumstances.  They're not

24  privileged as a rule.

25          When I look at your privilege log, most of the

1   communications here are between your client and the plaintiff,

2   and they involve your client's clients' names.  So they're not

3   privileged once you sent a letter with the person's name on

4   it.  Almost everything in your privilege log is a

5   communication with this plaintiff.  So how could that possibly

6   be privileged?  It makes no sense.  And so I reject that

7   entire argument that you're making concerning client names.

8           It's your burden to establish the privilege, and you

9   simply haven't established it.  There's nothing in this case

10  that says to me these clients' names are privileged, other

11  than some fear you have that they'll see your clients.  But to

12  the extent that's even true, your client wrote names with the

13  client's clients' names on them to this plaintiff.  So he's

14  already put them out there.

15          MR. MCGIRNEY:  Okay.  Well, Your Honor, like I said,

16  we've tried to comply.  I will go through them again, and if

17  you say it's to third parties, obviously they'll be certainly

18  redacted copies.

19          THE COURT:  I don't say it's to a third party.  I'm

20  looking at your privilege log, the author MRS, Mitchell Reed

21  Sussman, recipient, plaintiff.  You claim attorney-client

22  privilege.  That's on Docket 71-9 in this case, page 2 of 30.

23  It's the first page of your privilege log.  How possibly could

24  a letter from your client to this plaintiff be privileged

25  under the attorney-client privilege?

1          MR. MCGIRNEY:  Okay.

2          THE COURT:  Well, then why would you put it on the

3     privilege log and fail to disclose it?

4          MR. MCGIRNEY:  Well, I'll look at that, Judge.

5     And --

6          THE COURT:  That's almost every entry on a 30-page

7     privilege log.

8          MR. MCGIRNEY:  Okay.

9          THE COURT:  So I don't know why we're here, what

10    we're doing, why this is necessary.  I mean, it's absolutely

11    ridiculous, as far as I'm concerned.  And what I'm going to do

12    is I'm going to compel you, again, to turn over these

13    documents, and if you don't, then I expect we're going to have

14    to go to other sanctions under 37 --

15         MR. MCGIRNEY:  Very well, sir.

16         THE COURT:  -- (b)(2), and we'll discuss that then

17    at the time.  I think the plaintiff will have to specifically

18    request those sanctions.  You may have to have an evidentiary

19    hearing concerning your failure to comply, and then we'll take

20    it from there, but I don't see -- I mean, you tell me.  Why

21    are these documents privileged that you're withholding?  I'm

22    just not hearing --

23         MR. MCGIRNEY:  Well, in certain instances,

24    obviously, the ones that went to the plaintiff, that's not the

25    case, but in certain instances the sole identity of the client

1  is privileged because, quite frankly --

2       THE COURT:  Show me an instance.  Disclosure, show

3  me an instance on your privilege log where you've logged

4  something that's privileged and the name of the client is

5  somehow privileged?  I'll wait.  It's Document 71-9.  It's

6  attached to the plaintiff's motion in this case.

7       MR. MCGIRNEY:  I have to go through all of that?

8       THE COURT:  Well, it's your burden.  So show me

9  something that's privileged.  I'll look at it in camera right

10 now.

11      MR. MCGIRNEY:  All right.  Judge, I will go back and

12 I will -- quite frankly, I've been working on Orange Lake.  I

13 will go back and I will go through this again, and I will

14 comply with your order.

15      THE COURT:  Okay.  So your answer to me now, though,

16 is that you don't -- you can't show me anything that's

17 privileged --

18      MR. MCGIRNEY:  No.

19      THE COURT:  -- based on client name.

20      MR. MCGIRNEY:  No.

21      THE COURT:  Okay.  All right.  All right.  That's

22 that then.  Thank you.  So an order will be forthcoming on the

23 motion to compel.  It's probably going to be granted in part

24 and denied in part.  I frankly am going to -- to the extent

25 you're requesting the sanction of waiver of attorney-client

*14*

1    privilege, I don't find that's appropriate.  I do find that

2    they haven't met the burden of a privilege, and that will be

3    forthcoming in the order.  The privilege log is not

4    sufficient.  I'm not seeing anything privileged.  I asked

5    counsel to show me what is actually privileged on the

6    privilege log.  He can't do it.  So I'll take it from there.

7    A written order will be forthcoming in relation to that.

8         Mr. McGirney, your motion to compel is the next

9    thing, Document 69 in this case.

10        MR. MCGIRNEY:  Yes, sir.  We forwarded rather simple

11   requests for production to the plaintiff in December of 2017.

12   They were only five points now.  Because there were so many

13   plaintiffs, we did it properly.  We sent a request to produce

14   to every single plaintiff with these five items.

15        We did not get -- we got an objection on

16   February 12th, not one piece of paper.  Now, I would assume --

17   and this case has sort of now become a discovery war, but I'm

18   assuming, if they sued my client with the allegations that

19   they had in this Complaint, that they would have documents to

20   support it.  And the requests were relatively simple.

21        THE COURT:  Well, they say they do.  They just want

22   to enter into a confidentiality order.  So --

23        MR. MCGIRNEY:  Well then, why, why not -- why would

24   the discussion not be about that confidentiality order for

25   nine months?

*15*

1          THE COURT:  My understanding is they sent you three

2  communications concerning a request to enter into a

3  confidentiality order, and you ignored those three

4  communications.  Is that not accurate?

5          MR. MCGIRNEY:  Well, that's not true.  That's not

6  true.  I got the confidentiality order signed in September.

7          THE COURT:  So you have a signed confidentiality

8  order now?

9          MR. MCGIRNEY:  It's in place.

10          THE COURT:  Okay.

11          MR. MCGIRNEY:  But I've been waiting and waiting,

12  and when I talked to them -- in fact, Joann Velez, who is an

13  associate of Mr. Backman -- in early July or in July when I

14  came back from surgery on a part-time basis, I said, Where are

15  all of those documents?  She says, Well, we're working on it.

16  She asked me not to file a motion to compel.  She said by the

17  end of August we would get them.  We didn't get a thing in

18  August.  That's why the motion to compel was filed on

19  August 29th.  We haven't gotten one piece of paper.  So --

20          THE COURT:  When was the confidentiality order

21  entered into?

22          MR. MCGIRNEY:  We didn't get the confidentiality

23  order sent to me -- I didn't receive it until mid September.

24          THE COURT:  Okay.  So when was it executed?

25          MR. MCGIRNEY:  I'm sure they said -- I believes late

1   (unintelligible) was the basis for it.

2           THE COURT:  No. When was it executed?

3           MR. MCGIRNEY:  The day I got it.

4           THE COURT:  When was that?

5           MR. MCGIRNEY:  August -- September what, 15th?

6           THE COURT:  Well, if you don't know, I'll ask them,

7   but it sounded to me like they were going to respond to all

8   discovery once a confidentiality order was entered into.

9           Now, it was probably their obligation to file a

10  motion for protective order if that was a basis in which they

11  were going to object, which they didn't.  So I'm not

12  necessarily happy with the way this has worked out.  To the

13  extent you had a problem with it, you could have filed a

14  motion to compel, which you've done, at any time.

15          I mean, I intend to have them respond to your

16  discovery, and I think they are.  So maybe I should hear from

17  them at this point.

18          MR. MCGIRNEY:  Well, just -- Your Honor, I just want

19  to point out I think I was more than fair with them waiting

20  and waiting and waiting to file a motion to compel.  We are

21  now almost nine months after the initial request, and it

22  wasn't voluminous.  It shouldn't be voluminous.

23          And, you know, what's good for the goose is good for

24  the gander here.  They're all over me about our failure to

25  respond to discovery, and they haven't given us one piece of

1   paper.

2          THE COURT:  Well, I think all they requested was a

3   confidentiality order, which is fairly standard, and I think

4   every party in all these cases have entered into, as far as I

5   know.  But let me hear from them.

6          MR. BACKMAN:  Monday night we got the agreement from

7   Mr. McGirney with the stipulation.  Tuesday, and by Tuesday I

8   mean yesterday, we started our production.  He's already been

9   given a thousand pieces of paper, and he will get more, now

10  that he's finally agreed to the stipulation that we've asked

11  for and sent him back in March.

12         THE COURT:  You understand, just so we don't have

13  this issue going forward in other cases, that that's not a

14  legitimate basis to object to produce.  If they were going --

15  if you were going to withhold documents on that basis, a

16  motion for protective order would be an appropriate remedy.  I

17  can give you that order, as opposed to waiting for their

18  stipulation, you can produce discovery, and we can move

19  forward.  Waiting nine months in order to turn over discovery,

20  just waiting on them -- it's your obligation to respond to

21  discovery, and that's not a legitimate ground for objection.

22  So I'm glad to hear it's happening now.

23         MR. BACKMAN:  Could have happened a long time ago.

24  And quite candidly, even before he filed this motion, he

25  didn't talk to us.  He didn't say anything.  He didn't ask us

*18*

1    to -- why we haven't produced them.  He didn't follow-up on

2    the stipulation.  We sent him a letter after we got this

3    motion, Hey, all you need to do is send us this.  That was on

4    September 10th.  We still didn't get it until Monday night,

5    and we immediately started our production because that's all

6    we've been waiting for.

7         THE COURT:  Was there any problem as far as you can

8    tell with the form of it?  Did he suggest any edits to the

9    confidentiality order?

10         MR. BACKMAN:  Nope, nothing.  We had the same

11    problem in the related case.  I actually think he still hasn't

12    signed that.  It's not his documents in that case.  It's the

13    others.

14         THE COURT:  He states that he talked to Joann Velez

15    specifically about this motion in the 3.01(g) conferral.

16         MR. BACKMAN:  Ms. Velez submitted a sworn

17    declaration in support of our opposition that indicates that

18    that didn't happen.  The only exchanges that have ever

19    happened -- if you want to even say it's related to this, but

20    I think it was related to the Orange Lake case -- are in the

21    e-mails that we provided in support of our opposition, which

22    were in March.

23         So even if he wants to somehow interpret those

24    e-mails as being related to the discovery in this case, he

25    said nothing between March and August 29th, when he filed this

1   on the afternoon after the order of show cause was entered in

2   the Orange Lake case.

3          So I think there are other motivations here, but I

4   don't think it's relevant for purposes of today.  We're

5   producing the information we said we would produce.  I don't

6   think there's anything else to discuss, Your Honor.

7          THE COURT:  All right.  Thank you.

8          MR. MCGIRNEY:  Your Honor --

9          THE COURT:  Mr. McGirney, yeah, I want to discuss

10  this with you.  When did you have this discussion with

11  Ms. Velez about this motion?

12         MR. MCGIRNEY:  My concern is this --

13         THE COURT:  No.  I asked you a question.

14         MR. MCGIRNEY:  I'm sorry.

15         THE COURT:  When did you have this discussion with

16  Ms. Velez?

17         MR. MCGIRNEY:  I had discussions with her before I

18  went out in March and in April.

19         THE COURT:  The 3.01(g) for this motion were

20  discussions that occurred in March and April?

21         MR. MCGIRNEY:  There were before we filed my motion

22  to -- we -- I did bring this up, and I was told that the

23  confidentiality was in their February response, but it never

24  was really -- when we discussed it, that was not really the

25  issue as far as I'm --

*20*

1          THE COURT:  Did you have a 3.01(g) discussion with
2    Ms. Velez about this case?
3          MR. MCGIRNEY:  The 3.01 discussion with her was
4    in -- a month before the August 29th.
5          THE COURT:  So you're saying in July?
6          MR. MCGIRNEY:  Yes.
7          THE COURT:  And you discussed filing your motion to
8    compel with her?
9          MR. MCGIRNEY:  I filed the motion to compel on
10   August 29th, but I also would like to make another comment for
11   the record, Judge.
12         THE COURT:  Excuse me.  Hold on.  When did you have
13   the 3.01(g) discussion with her?
14         MR. MCGIRNEY:  It was about a month before the
15   August -- yeah, August 29th is when I filed the motion to
16   compel.
17         THE COURT:  You're saying you had a discussion with
18   her a month before?
19         MR. MCGIRNEY:  Yes.
20         THE COURT:  During the time --
21         MR. MCGIRNEY:  She said, Don't file the motion to
22   compel.  We'll get you the documents.  That was what I heard.
23         THE COURT:  Okay.  Okay.  I mean, I don't really
24   know what to do with that.  So she has sworn testimony saying
25   that never happened.  You're saying she's, she's perjured

1    herself before the Court?

2         MR. MCGIRNEY:  I guess maybe I'm asking you now for

3    a clarification as to meet and confer.  Some judges require us

4    to physically meet.  Some say we can do it by telephone.

5    We've been doing it by telephone in this case.  But when I

6    have these conversations, I guess I'm delusional because they

7    say I never had these conversations.  They call and say, Hey,

8    can we talk about this?  Yeah.  Okay.  Fine.  The issue with

9    the witnesses at a number of depositions, I had that

10   conversation with her.

11        Quite frankly, my mental facilities are not

12   diminished because of the surgery.  I just was unable to work.

13        THE COURT:  Well, I mean, you were able to work,

14   you're arguing because in July is during the time --

15        MR. MCGIRNEY:  Right.  I was at home recovering from

16   surgery when I had the conversation.

17        THE COURT:  Okay.

18        MR. MCGIRNEY:  Okay.  But, Judge, I also would like

19   to point out this:  I filed a notice of unavailability in

20   April in this case, and the second, third in the Orange Lake

21   they did nothing, but they sent 118 requests for production

22   close to the date that I went out for surgery, and it was

23   intentional.  They knew I was out.

24        THE COURT:  Well, it was intentional because they

25   have discovery obligations that they have to comply with in

*22*

1    this case.

2         MR. MCGIRNEY:  I understand.

3         THE COURT:  Your client has two attorneys that have

4    made notices of appearance in this case.

5         MR. MCGIRNEY:  Well --

6         THE COURT:  There's no -- we're not going to stop

7    this entire case because you're having a medical issue.  I

8    mean, it's proceeding.  You're not the only attorney.  They

9    have obligations.  If you request extensions of time, I've

10   given them.  I don't understand.  If you needed more

11   extensions of time -- but you don't respond to motions.  You

12   don't comply with deadlines.  You don't comply with orders.

13   So --

14        MR. MCGIRNEY:  I'm well aware of what I haven't done

15   in this case, Judge.  I told you it's an anomaly.  It hasn't

16   happened before.  I was coming from surgery.

17        THE COURT:  Well, under the Florida bar --

18        MR. MCGIRNEY:  One of the --

19        (Speakers speaking simultaneously.)

20        THE COURT:  -- rules --

21        MR. MCGIRNEY:  One of the requests --

22        THE COURT:  Excuse me.  Under the Florida bar rules,

23   if you don't feel that you can adequately represent your

24   client, then perhaps you shouldn't.  But I don't know.  I

25   mean, you have the obligation to make that assessment and make

1   that decision.  But all I can tell you is that the deadlines

2   are not extended.  There's been no request to extend them.

3   The orders are what they are.  There's been no requests to

4   put --

5            MR. MCGIRNEY:  Pursuant to those orders --

6            (Speakers speaking simultaneously.)

7            MR. MCGIRNEY:  I'm sorry.  I didn't mean to cut you

8   off.

9            THE COURT:  So unless and until there are, then you

10  have obligations to comply with.

11           MR. MCGIRNEY:  Well, pursuant to our discussion last

12  month when I was here, and I told you what had happened, I

13  promised you that I would go through and get whatever I could

14  get produced produced.  In the Orange Lake case we've produced

15  over 3,000 unredacted pieces of paper.

16           THE COURT:  This is not the Orange Lake case.

17           MR. MCGIRNEY:  I understand.  In this case we had

18  previously responded, and I will go back and look at them to

19  make sure that there is a proper assertion of privilege or

20  confidentiality.  And I'll do that before the end of the week.

21           THE COURT:  Well, I'm just -- I'm going to compel

22  you to produce all of the documents pursuant to my prior order

23  within a specified period of time, and then, I guess, if you

24  don't, we'll deal --

25           MR. MCGIRNEY:  I understand, but --

*24*

1          THE COURT:  -- with that.

2          MR. MCGIRNEY:  -- I told you I would.

3          THE COURT:  I know.  My understanding is you

4   haven't.  You've given us a privilege log that contains

5   documents that you admit now aren't privileged.  So that's

6   what I'm dealing with.

7          MR. MCGIRNEY:  Yes, sir, I understand.

8          THE COURT:  Okay.  All right.

9          MR. MCGIRNEY:  Your Honor, Mr. Sussman is here.  I

10  know he's not supposed to be here but for the other case, but

11  he would like to be heard.

12         THE COURT:  I'm not going to hear him before the

13  Court at this time.  It's not appropriate.  He's represented

14  by counsel.

15         MR. BACKMAN:  Your Honor, may I just make two

16  points, not too substantively, really, but one of the last

17  comments concerned me.  I guess the order will dictate, but I

18  don't want another round of production with more redactions

19  and privilege objections.  I think they had that chance, and

20  that should be overruled to the extent that -- or waived,

21  whatever it may be -- based upon the rules, not necessarily as

22  a sanction.

23         And the other, I would point out that we still don't

24  have the full client list, as well as all these other

25  documents, but we have expert disclosures in this case in

*25*

1    about five weeks, I think.  Without knowing who he

2    represented, it's really hard for us to compile the

3    information we need in order to meet those various deadlines.

4    I know the Court's concerns from other hearings about

5    deadlines and extensions.  I just put it out there for

6    purposes of whatever the deadline will be in the order that

7    gets entered on these motions.

8             THE COURT:  It will be a short deadline.  I mean,

9    I'll give him more than the end of the week, but it's going to

10   be a short deadline.

11            MR. BACKMAN:  Understood.  Thank you, Your Honor.

12            MR. MCGIRNEY:  Your Honor, as I understand it, this

13   case is about Westgate, not the other third-party

14   administrators that -- the third parties that we would -- had

15   represented in other cases.  So I guess I'm not -- the problem

16   I have is the same problem I had all along, is they're using

17   this discovery in Westgate to file other lawsuits and to

18   harass other clients that do what TET does.

19            THE COURT:  To the extent that's an objection to

20   discovery, we've already had hearings on that.  I've overruled

21   that objection.  It's no longer valid.

22            MR. MCGIRNEY:  All right.

23            THE COURT:  All right.  Anything else from either

24   side in this case?

25            MR. BACKMAN:  Thank you, Your Honor.

26

1            THE COURT:  All right.  We're in recess.

2        (WHEREUPON, this matter was concluded at 9:31 a.m.)

3

4                         *   *   *

5

6                    CERTIFICATE OF REPORTER

7

   I certify that the foregoing is a correct transcript of the
8  record of proceedings in the above-entitled matter.

9

10   _/s/ Suzanne L. Trimble_____         11/9/18_
     Suzanne L. Trimble, CCR, CRR, RPR            Date
11   Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25