UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WESTGATE RESORTS, LTD. et al.,

    Plaintiffs,

v.                                                    Case No. 6:17-cv-1467-Orl-37DCI

MITCHELL REED SUSSMAN; and
MITCHELL REED SUSSMAN &
ASSOCIATES,

    Defendants.

## ORDER

Before the Court is Plaintiffs' Motion to Reconsider July 26, 2019 Order and, alternatively, Motion to Certify Issue for Interlocutory Appeal, and, alternatively, Motion to Reopen Discovery, Extend Length of Trial, and Continue Trial. (Doc. 260). Defendants responded. (Doc. 265.) The Motion is denied.

### I.    BACKGROUND

After the Court ruled on the parties' cross-motions for summary judgment (Doc. 230), the parties appeared for the pre-trial conference on June 19, 2019. (Docs. 242, 262.) The Court expressed serious misgivings about Plaintiffs' ability to prove up damages for their tortious interference claim at trial, and Plaintiffs responded they intended to use statistical evidence to bolster circumstantial evidence to prove this up. The Court then continued trial until the September 2019 term so Plaintiffs could brief "the admissibility of statistical evidence to support causation as it relates to the damages element of a

-1-

tortious interference with contractual relations claim." (Doc. 241, p. 3.) The Court also directed Plaintiffs to identify the statistician they intended to use. (*Id.* at 1–3.)

Plaintiffs responded that they have no statistician or traditional statistical analysis but would offer the expert opinion of Steve Wolf, an accountant who computed Plaintiffs' losses from business records from the time owners stopped paying. (Doc. 244.) Plaintiffs already stated that Mr. Wolf would not testify on causation. (Doc. 232, p. 6.) Plaintiffs then submitted their brief stating, in relevant part, they seek to recover damages for 175 owners who stopped payments after a letter of representation was sent. (Doc. 245, pp. 5–7.) They will prove up damages (and causation for the resignation and deed to associate owners) by coupling testimony from Mr. Sussman and five exemplar owners with "circumstantial" evidence of when the 175 owners stopped paying according to Plaintiffs' business records. (*Id.* at 5–15.)

The Court then ruled on Plaintiffs' proposed method of proving up causation as it relates to the damages element of their tortious interference claim. (Doc. 254 ("**July 26 Order**").) For the remaining group of owners—those who stopped paying and received a deed back—the Court found Plaintiffs' proposed evidence insufficient to bridge the causation gap for the remaining damages element. (*See id.* at 4–7.) This was after the Court provided Plaintiffs the opportunity to demonstrate how statistical evidence—by nature *circumstantial*—could prove up the damages element, and Plaintiffs said they had no such evidence. (*See id.*)

Plaintiffs now seek reconsideration of the Court's ruling, or certification for interlocutory appeal, or to reopen discovery so they may depose all owners. (Doc. 260).

With Defendants' response (Doc. 265), the matter is ripe.

## II.     DISCUSSION

### A.     Motion for Reconsideration

Plaintiffs seek reconsideration on the basis their circumstantial evidence suffices to prove up damages on the tortious interference claim and requiring owners to testify directly is contrary to law. (Doc. 260, pp. 1–13.) They contend the Court wholesale rejects the premise that tortious interference claims can be proved by circumstantial evidence and point to cases where circumstantial evidence was presented and accepted for tortious interference claims. (*See id.*) Plaintiffs are wrong.

Reconsideration under Rule 59(e) is appropriate on the basis of: (1) an intervening change in controlling law; (2) newly discovered evidence; or (3) clear error or manifest injustice. *See Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994) (noting that courts have generally granted such relief in those three circumstances). Rule 60(b) also allows a party to request reconsideration on certain grounds. *See* Fed. R. Civ. P. 60(b)(1)–(6). "The Court's reconsideration of a previous order is an extraordinary remedy, to be employed sparingly." *Mannings v. Sch. Bd. of Hillsborough Cty.*, 149 F.R.D. 235, 235 (M.D. Fla. 1993) (citation omitted). "[T]he decision to grant such relief is committed to the sound discretion of the district judge . . . ." *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993) (citations omitted).

Here, Plaintiffs are attempting to collect damages from 175 owners' nonpayments (originally 418). This is 175 separate claims of tortious interference with contractual relations at the same time. That means 175 contracts, 175 owners, 175 timeshares, and 175

sets of circumstances surrounding each owner's nonpayment. For this, Plaintiffs offer testimony from five owners and Mr. Sussman, admitted facts, and dates the owners stopped paying relative to when Plaintiffs received a letter of representation. (Doc. 260, pp. 7–8.) And for this case, that's not enough. (Doc. 254.) This is not a run-of-the-mill tortious interference case, like the ones Plaintiffs rely on, where a discrete set of circumstances surrounds the breach of one contract and there's enough evidence of the parties' relationships to allow circumstantial evidence to carry the day. *See Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 848 (11th Cir. 2017) (non-compete);*Slip-N-Slide Records, Inc. v. TVT Records, LLC*, No. 05-21113-CIV, 2007 WL 3232274, at *6–8 (S.D. Fla. Oct. 31, 2007) (distribution contract); *Marlite, Inc. v. Eckenrod*, No. 09-22607-CIV, 2011 WL 39130, at *9–14 (S.D. Fla. Jan. 5, 2011) (non-compete). So, yeah, as the Court said before, those cases are inapposite to this large-scale tortious interference case, where the exact evidence missing is the circumstances surrounding these 175 owners' nonpayments.

What's more, Plaintiffs' citation of *Southwest Stainless, LP v. Sappington*, 582 F.3d 1176 (10th Cir. 2009), to support their argument that the Court is wrong, actually supports the July 26 Order. There, the U.S. Court of Appeals for the Tenth Circuit affirmed the district court's drawing of distinctions in its damages award on the tortious interference with contract claim based on a non-compete. *Id.* at 1184–86. As the district court put it, "[The plaintiffs] want me to infer that all the damages from the breach are all the profits that Rolled Alloys made from the Tulsa customers since these gentlemen joined Rolled Alloys. And I think I would have to make a leap of faith there." *Id.* at 1184. Sound

familiar? So the district court didn't award damages where it was "'speculative and contingent' to infer that Metals would have won all of the business of Rolled Alloys' Tulsa-area customers but for Sappington and Emmer breaching the Noncompeteition agreements," but did award damages where "the evidence showed that their breaches led Metals to lose the individual Hughes Anderson and Cust-o-Fab orders." *Id.* For those specific orders, there was "ample evidence," including circumstantial, to support damages. *Id.* The Tenth Circuit upheld the district court's discriminate approach that refused to lump together all damages without supporting evidence. *See id.*

Here, as the July 26 Order explained, since Plaintiffs missed the boat on establishing causation for the 175 outstanding owners by presenting statistical information, and their remaining evidence doesn't speak to these owners' circumstances surrounding their nonpayments, all that's left to prove up their claim is direct evidence from the owners. (Doc. 254.) We're at this point because of how Plaintiffs pled, approached, and litigated this case. Their strategy. Not the Court going rogue and not following the law, as Plaintiffs suggest.[1] The July 26 Order is absolutely consistent with

---

[1] Neither is there any deviation from *Diamond Resorts v. Aaronson*, No. 6:17-cv-1394-Orl-37DCI, another timeshare case with Plaintiffs' counsel that Plaintiffs say supports letting their circumstantial evidence go to trial. (Doc. 264, p. 21.) *Diamond* was different. There was one summary judgment motion—the defendant's—instead of cross, the plaintiffs there brought a Lanham Act claim for false advertising that undergirded the tortious interference claim (also based on directions not to pay), and the plaintiffs had a designated statistician, Dr. Stewart, that allowed the case—in the plaintiffs' best light—to proceed to jury trial. And need the Court remind Plaintiffs' counsel that at that trial, outside of the jury, the Court raised specific concerns with their causation evidence because of the absence of testimony that owners viewed the false ads, acted on the ads, and followed the direction to stop paying; and expressed serious hesitations about damages going to the jury. The parties then settled. So *Diamond* is also inapposite here.

the law on tortious interference claims, causation, and damages. Indeed, despite Plaintiffs' caterwauling, there is no error, much less clear error. Reconsideration is denied.

### B. Motion to Certify for Interlocutory Appeal

Next, Plaintiffs move to certify two issues for interlocutory appeal under 28 U.S.C. § 1292(b).

Under 28 U.S.C. § 1292(b):

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

The requirements of § 1292(b) raise these questions: "(1) What is a 'controlling question of law?'; (2) what is a 'substantial ground for difference of opinion?'; and (3) what does it mean for an appeal to 'materially advance the ultimate termination of the litigation?'" *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1257 (11th Cir. 2004) (quoting 28 U.S.C. § 1292).

A "controlling question of law" under § 1292(b) "has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine" and "is more of an abstract legal issue or what might be called one of 'pure' law, matters the court of appeals 'can decide quickly and cleanly without having to study the record.'" *Id.* at 1258 (quoting *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000)). For a "substantial ground for difference of opinion," the question must not be one where the Eleventh Circuit is "in 'complete and unequivocal' agreement with the district court"

or one where "the resolution of it [is] so clear." *Id.* (quoting *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 970 F.2d 785, 788–89 (11th Cir. 1992)). And a question that "may materially advance the ultimate termination of the litigation" is one where the "resolution . . . would serve to avoid a trial or otherwise substantially shorten the litigation." *Id.* at 1259 (citations omitted).

Section 1292 appeals are to be permitted on a limited basis. They "were intended, and should be reserved, for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." *Id.* (citations omitted). Additionally,

> The legal question must be stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law. And the answer to that question must substantially reduce the amount of litigation left in the case.

*Id.* Clearly, § 1292 "sets a high threshold for certification to prevent piecemeal appeals," and "[m]ost interlocutory orders do not meet this test." *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1359 (11th Cir. 2008); *see also McFarlin*, 381 F.3d at 1259 ("Because permitting piecemeal appeals is bad policy, permitting liberal use of § 1292(b) interlocutory appeals is bad policy.").

The movant must establish each of the required elements under § 1292. *See, e.g.*, *In re Wiand*, No. 8:10-cv-71-T-17MAP, 2012 WL 611896, at *3 (M.D. Fla. Jan. 4, 2012). "And, even assuming [the movant] were to satisfy all three demands, the motion is committed 'wholly' to the discretion of the district court and the court of appeals." *Id.* Ultimately, § 1292 interlocutory appeals should be the "rare exception" as the final judgment rule

guards "the proper division of labor between the district courts and the courts of appeals and the efficiency of judicial resolution of cases." *McFarlin*, 381 F.3d at 1259, 1264.

Plaintiffs ask the Court to certify two "controlling questions of law" based on the July 26 Order requiring Plaintiffs to prove up their tortious interference claim by owner testimony—which, again, the Court found to be Plaintiffs' last resort. (Doc. 260, pp. 15–17.) Plaintiffs say this "question of law is controlling because it determines the outcome of more than 97% of [their] damages claims"; there are other timeshare cases floating around; there's difference of opinion because "[t]he Court clearly disagrees with the authority cited by Westgate"; and certifying this question would reduce total litigation as Westgate will appeal. (*Id.* at 16–17.)

In response, Defendants first point out that these "questions of law" Plaintiffs seek to certify turn on questions of fact, which is antithetical to "a proper § 1292(b) appeal." (Doc. 265, p. 9 (quoting *McFarlin*, 381 F.3d at 1259).) Second, Plaintiffs haven't stated any specifics to establish just how related those "other" timeshare cases are; but certainly Plaintiffs' strategy in this case (using exemplars to extrapolate damages for 400 owners) hasn't borne fruit. (*Id.* at 10.) Third, Defendants note that Plaintiffs haven't shown grounds for difference of opinion as required; they've just said the Court rejected their position. (*Id.*) And last, Defendants venture that certification at this stage would not advance this case, nearing its final stages. (*Id.* at 10–11.)

As it stands, the Court entirely agrees with Defendants. Certification is improper on all accounts, and the Court will not do so here. The entirety of the outstanding damages inquiry, the whole enchilada, is factual. Whether Plaintiffs' evidence can prove

up damages. This isn't a legal question that can be plucked out from the remainder of the case, quickly resolved, and given back to the Court. To resolve it requires poring over the record, as the Court has done, absorbing the facts Plaintiffs present (and importantly the facts missing), and applying those facts to the remaining damages inquiry. Such inquiries are wholly unsuitable for interlocutory appeal, *McFarlin*, 381 F.3d at 1259, so the Court will not do so here. Plaintiffs will have their opportunity to appeal soon. Not now. This request is denied.

### C. Reopen Discovery

Last, Plaintiffs move the Court to reopen discovery for six months, grant leave to conduct 174 additional depositions, and continue trial. (Doc. 260, pp. 17–24.) They contend good cause exists to reopen discovery and grant additional depositions because the July 26 Order "places an impossible burden on [them]," on the grounds the Court categorically rejected statistical evidence to prove up damages. (*Id.* at 20.) No. The Court explicitly ordered briefing on this question, and Plaintiffs had no statistician. (Doc. 254.) So the Court looked to what was left that could prove up damages. One remaining thing stared back: direct testimony from the owners. So the Court ruled accordingly.

Faced with this looming reality, Plaintiffs now frantically scramble to get as many owners as they can to appear since they only deposed five. (Doc. 260, pp. 20–22.) Because that number is 7, as Plaintiffs represent, they ask to reopen discovery (closed since January 4, 2019 (Doc. 67)) and go to trial after deposing 174 owners. (*Id.*) No re-doing summary judgment though, at least on their end. (*Id.* at 22.) Plaintiffs acknowledge they never requested leave during discovery for additional depositions, but say this was a trial

strategy because in another case (not before the Undersigned), a request for additional depositions was denied.[2] (*Id.* at 20–21.) So they made a strategic decision not to request more here. (*Id.*) Well, strategy doesn't always pan out.[3] Plaintiffs then point to *Diamond Resorts v. Aaronson* for why they didn't request more depositions earlier, because there no pre-trial rulings prohibited circumstantial causation evidence. As the Court said earlier, *Diamond* was different—in kind of claims (false advertising, Lanham Act), posture at summary judgment (not cross-motions), no admitted facts, and, crucially, Plaintiffs had a statistician. Even so, during that trial, the Court *sua sponte* raised the issue of causation and, after Plaintiffs couldn't present their expert's report instead of live testimony, the parties settled. So if anything, *Diamond* apprised Plaintiffs' counsel of the difficulty they could face in proving up damages, and doesn't support their argument here. Altogether, this shows the absence of good cause to justify reopening discovery.

Plaintiffs then say "manifest injustice" will result if trial is not continued since this evidence exists, it is simply a matter of going out and gathering it. (Doc. 260, pp. 23–24.) So it would be "patently unfair" to prohibit Plaintiffs from collecting it, as Plaintiffs, ever optimistic, submit it'll obviously score them a win at the end of the day. (*See id.*)

---

[2] Plaintiffs fail to state that their request for additional depositions there was denied *without prejudice* because Plaintiffs had failed to elucidate why they needed to take that many depositions with sufficient authority. (Doc. 260-4.)

[3] Of course, a statistician is not the only alternative to depositions that could get at this evidence. There could be any number of things, such as written questionnaires, a special discovery plan, special interrogatories, none of which were attempted (to the Court's knowledge) during discovery here. Plaintiffs' counsel is now belatedly attempting to use written questionnaires in another case, *Westgate Resorts, Ltd. v. Reed Hein & Associates*, No. 6:18-cv-1088-Orl-31DCI, Doc. 98 (Aug. 12, 2019).

Unfortunately for them, this doesn't cut it for "manifest injustice." Plaintiffs are at this precipice because of how they chose to structure and litigate this case. What is needed to prove damages for a tortious interference claim is rudimentary causation. Where the rubber hits the road is when a party tries to squeeze 418 distinct claims based on separate contracts and individual circumstances into one case and leave out evidence from 97% (as Plaintiffs' put it) of those owners. The Court gave Plaintiffs the chance to show how it could be done without that 97%. Plaintiffs squandered it, and now come back to the Court saying, somehow, the Court has wholesale rejected the acceptability of circumstantial evidence in proving up tortious interference claims. Talk about throwing the baby out with the bathwater. No. It's not enough at this point in this case. As Mr. Sussman put it way back when, Westgate is "*sui generis*."

This case will proceed to trial as planned, consistent with the July 26 Order.

### III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion to Reconsider July 26, 2019 Order and, alternatively, Motion to Certify Issue for Interlocutory Appeal, and, alternatively, Motion to Reopen Discovery, Extend Length of Trial, and Continue Trial (Doc. 260) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 15, 2019.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record